(No. 2489—

THE AMERICAN SALES BOOK CO., LTD., Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 31, 1935.*
*Rehearing denied September 11, 1935.*

GILLESPIE, BURKE & GILLESPIE, for claimant.

OTTO KERNER, Attorney General, and JOHN KASSERMAN, Assistant Attorney General, for respondent.

Mr. Justice Yantis delivered the opinion of the court:

This is a claim for merchandise sold and delivered to the State of Illinois by claimant through its agent, H. C. Harris of Springfield, Illinois. Claimant states that the merchandise for which payment is claimed is set out in the bill of particulars attached and is of the aggregate value of One Thousand Five Hundred Ninety Eight and 25/100 Dollars ($1,598.25) for which sum it asks an award. The twenty-one (21) invoices which constitute and make up the bill of particulars aggregate the sum of Two Thousand Three Hundred Twenty Eight and 18/100 Dollars ($2,328.18.) No satisfactory evidence appears in the testimony of claimant as to which of these twenty-one (21) invoices go to make up the excess over the purported aggregate value of One Thousand Five Hundred Ninety Eight and 25/100 Dollars ($1,598.25), but an examination of the invoices discloses that at least two of them are apparently duplicates of other invoices included in the list. There are five of the invoices appearing in the bill of particulars that do not show any requisition number and the records show a statement by H. C. Harris, the agent of claimant, that the merchandise charged in five of the invoices i. e. that for $220.00 dated March 21, 1933; $83.50, dated April 4, 1933; $41.75, dated March 27, 1933; $20.36, dated August 10, 1932 and $5.12, dated April 14, 1933 making a total of $370.73 were not State orders and were never proper charges against the State of Illinois.

Claimant contends that payments to the amount of its claim herein were erroneously paid by the State to H. C. Harris instead of the voucher being mailed direct to the company and it bases its demand upon the fact that the invoices used by it contained the notations "Please send remittances to The American Sales Book Co., Ltd., Elmira, N. Y." and "Pay no money to Salesman." Their agent, Harris,

testified that he had been an employee of claimant since 1905 and from then until August 15, 1933; that he usually handled the orders obtained by him from the State of Illinois as follows:

"Usually requests were sent to me for quotations by the Division of Printing. Quotations were made by me individually back to the Division of Printing. The orders were then let according to the bid or quotation and sent back to my address or in some instances I was summoned on the telephone to come and get them. These were then reduced to our Springfield form of order blank for factory purposes and sent to the factory; the order being then shipped back to the State *with the invoice and bill of lading being sent to me. I mean the goods were shipped to the State and the invoice sent to me.* We reinvoiced according to the invoice that I had from the factory. In some specific cases the invoice was not given to the State but was made on a local invoice as of Springfield, Illinois. Many invoices were made that way; I could not tell the number. As many as three or four a year. *The purpose of reinvoicing at Springfield was that, it was the State's policy to buy everything they could buy in the State* and this could have been bought in the State. *Therefore, it was better to have it shown as a local proposition than coming from a foreign State.* * * * Sales and shipments to the State were usually paid by warrant. All local invoice warrants were made to me, and all those not reinvoiced locally to the American Sales Book Company and usually cleared through this office. The State would usually mail such invoices to the local office and the local office would remail them. Warrants issued in the name of the American Sales Book Company by the State of Illinois were never cashed by me. Those that had been reinvoiced at Springfield and the warrants that were made payable to me were cashed by me."

He further testified (P. 6 of record) that as a rule the requisition received by him from the Department of Printing was retained by him and not sent to the company; that he usually sent his own form.

It was stipulated between claimant and the State that the item of $753.00 appearing in claimant's statement of account was paid to H. C. Harris by warrant No. 32086 issued on November 16, 1932, and was personally endorsed by him.

That the item of $100.70 was paid to him by warrant No. 69251, dated August 25, 1932 and endorsed by him.

That the items of $23.36—$51.13—$72.01 and $474.25 were included in warrant No. 404858 in the sum of $649.00 paid to H. C. Harris and endorsed by him.

That the item of $63.15 was vouchered to H. C. Harris, voucher No. 1522, $36.00 thereof being paid to him on account of the Peoria State Hospital; that the total amount paid to H. C. Harris was $1,510.45.

In contradiction of the testimony of former Agent Harris, various requisitions or orders purporting to bear the signature of H. L. Williamson, then Supt. of the Division of Printing have been introduced as exhibits.

Claimant also denied through testimony of various office employees that after 1926 Harris was ever authorized by the company to make collections from any of its customers on any of its accounts. This, however, is negatived by examination of the record as a whole; claimant's witness, Totten, testifying that salesmen were in special instances authorized to make collections, and stated that in regard to their bills against the State for the items in question "We kept writing him concerning these items which had not been paid and his replies indicated that he was still working on them." In a letter to D. F. Totten under date of May 31, 1932 Mr. Harris stated "If you would mail me the 1st of each month a statement, not as a whole, but as each invoice, I could follow through—occasionally an invoice will go through the department in thirty to forty-five days; there are other times when they are sixty to ninety days vouchering."

There appears in the evidence a commission statement dated January 1, 1933 received by H. C. Harris and delivered by him to E. T. Rank, present Superintendent of the Division of Printing, wherein he is charged with a number of these sales aggregating with others $1,994.42 or a net charge of $1,695.26, after discounting 15% commission. His total commissions shown there to be due him and unpaid to January 1, 1933 were $2,461.09, from which the amount charged against him of $1,695.26 is deducted and a notation made of "check attached" to balance in the sum of $765.83. With the department letter of September 6th last mentioned (Exhibit 16) appears a statement of what disposition had been made in regard to a number of the items claimed by plaintiff. On the order of February 5, 1932 for $753.00 voucher No. 2076 was issued to H. C. Harris and same appears as one of the items allowed by the company in its commission statement settlement with him above referred to. The same is true of the items under date of April 19, 1932 of $23.75 and $36.90. A voucher was issued to H. C. Harris for the item of July 18, 1932 in the sum of $100.70 and was credited in the commission statement. The same is true as to the items of De-

cember 16, 1932, $23.36—December 19, 1932, $51.13 and December 21, 1932, $72.01. The item of July 22, 1932 for $63.15 was also credited against the account of Harris in the commission statement. According to the Agent Harris the charge of August 10, 1932 for $20.36 was not a State of Illinois charge but was for carbon ordered direct by Harris and was credited against his account in the commission statement. The charge of March 21, 1933 of $220.00 is also testified to as not being a State of Illinois charge, and the invoice bears no requisition number and is not billed to any officer or Department, but merely reads "State of Illinois." Neither does the invoice of $41.75 under date of March 27, 1933 carry any requisition number and neither this nor the invoice of $83.50 dated April 4, 1933 were for State orders, according to Harris. The same is true in regard to the invoice of $5.12 under date of April 14, 1933 and that of $20.36 under date of August 10, 1932.

There is additional testimony in the record of cash advances made to Harris by the company both prior and subsequent to January 1, 1933. Complaint is made of his failure to forward orders which he claimed to have at that time, and upon the possibility of obtaining which, the company advanced further funds to him, but such evidence has no material bearing upon the status of the account prior to January 1, 1933.

Claimant contends in its original and Reply Brief that the burden of proof is on the State to show the agent's authority to receive payment for the principal and that such agency is not presumed but must be proven, and further argues there is no evidence in the record that any of the items enumerated in the stipulation were ever reinvoiced or that warrants were made therefor to H. C. Harris and not to The American Sales Book Co. Ltd. The record discloses that the witness, Harris, testified repeatedly that he never cashed any warrants that were made payable to The American Sales Book Co. Ltd. The witness, Harris, had been employed by claimant for twenty-eight years and testified that he had been delivering a volume of approximately Ten Thousand Dollars ($10,000.00) worth of business a year from the State of Illinois to claimant. They apparently had confidence in him and were also willing to juggle orders through his hands so that they might appear as supplies furnished by an Illinois bidder.

From a consideration of the entire record and examination of the invoices and in the absence of many requisitions from the exhibits and the commission statement showing settlement of the items therein listed, we conclude that the claimant has no just claim against the State of Illinois.

Counsel for respondent has cited the following authority:

"Payments made to an agent are good and obligatory upon the principal. In all cases where the agent is authorized to receive payment, either by express authority * * *or from the particular dealings between the parties the principal is equally bound by authority which he actually gives, and by that which by his own acts he appears to give."

*Smith* vs. *Peoria County*, 59 Ill. 412.

*Phoenix Ins. Co.* vs. *Stocks*, 149 Ill. 319.

*James* vs. *Conklin & Hill*, 158 Ill. App. 640, 644.

We believe the above exceptions to the general rule apply to the case at bar. Regardless of the notations on the invoices used by claimant it is apparent from the record that in-so-far as the dealings between the Division of Printing of Illinois and claimant that H. C. Harris was the American Sales Book Co. Ltd. and that he clearly was vested with more authority than to merely solicit orders. Payment of the account has been made by the State, and if we give to the commission statement the credit to which it seems to be entitled, settlement has also been made with the claimant. An award is denied and the claim dismissed.

### OPINION ON REHEARING.

After a careful consideration of the petition for a rehearing in the above case we find nothing in the petition that was not carefully considered and passed on by the court in its original opinion in this case.

The decision heretofore rendered in this cause is therefore affirmed and the petition for rehearing is denied.